[Cite as *State v. Groce*, 2014-Ohio-389.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99857

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# EUGENE GROCE

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-528644, CR-528843 and CR-533154

**BEFORE:** E.T. Gallagher, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** February 6, 2014

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street, Suite 303
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Joseph J. Ricotta
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶2} Defendant-appellant, Eugene Groce ("Groce"), appeals the trial court's judgment revoking his probation. We find no merit to the appeal and affirm.

{¶3} Groce was indicted in three separate cases on charges of burglary, theft, and obstructing official business. The most serious charges included notices of prior conviction and repeat violent offender specifications. Two of the indictments arose from acts Groce committed several years ago. Groce was identified as a suspect in those cases when Groce was charged in the third case, and investigators discovered that his DNA matched evidence collected in those cases.

{¶4} In June 2010, Groce pleaded guilty to two counts of burglary, one count of breaking and entering, and one count of misdemeanor obstructing official business. Pursuant to the plea agreement, the state dismissed the notice of prior conviction specifications and the theft counts. The third burglary count was amended to breaking and entering.

{¶5} At sentencing, the trial court sentenced Groce to six years on each of the two counts of burglary, 11 months for breaking and entering, and a fine for obstructing official business. The court ordered the sentence suspended and imposed community control sanctions for three years. The terms of Groce's community control sanctions

included: six months to complete his GED, drug counseling, and mandatory drug testing.

The sentencing hearing concluded with the following dialogue:

> THE COURT: Now, Mr. Groce, I send all probation violators to prison. If you decide to commit an act that causes you to be found in violation of your probation * * * you're going to prison, okay?
>
> THE DEFENDANT: Yes.
>
> THE COURT: I got 11 years over your head that I will run wild if you come back here as a probation violator. * * * No, I got more than that. * * * 12 years, 11 months. You come back as a probation violator, I'm going to run it wild. You're going to do every day.

{¶6} Groce violated his probation. The court held a probation violation hearing, and Groce admitted that he tested positive for cocaine. The court found Groce to be in violation of the terms of his community control sanctions and ordered Groce's prison sentence into execution. The trial court's journal entry in each of the three cases ordered the six-year sentences to be served "[c]onsecutive to any other sentence." As a result, Groce incurred an aggregate twelve-year prison sentence. Groce appealed the court's revocation of his probation and this court reversed the trial court's judgment, stating:

> The trial court neither displayed a neutral and detached attitude toward Groce, nor adequately explained the reasoning for its decision to revoke Groce's community control.
>
> The record reflects that, once the trial court determined that Groce violated a condition of his community control, its decision was made based upon the court's policy, rather than whether the circumstances of Groce's violation warranted modification rather than revocation. The court made no evaluation "as to the overall social readjustment of the offender in the community," including "consideration of such variables as the offender's relationship toward his family, his attitude toward the fulfillment of financial obligations, the extent of his cooperation with the probation * * * officer assigned to his case, his personal associations, and — of course —

whether there have been specific and significant violations of the conditions of the probation."

(Citations omitted.) *State v. Groce*, 8th Dist. Cuyahoga No. 97736, 2012-Ohio-5171, ¶ 17-18.

**{¶7}** On remand, the trial court held a second probation revocation hearing. Groce again admitted that he tested positive for cocaine and that he has had an addiction problem for several years. Groce's trial counsel asserted that Groce needed drug treatment and that he had never received it before going to prison. In prison he received treatment and attended 89 AA and NA meetings. The trial court nevertheless ordered Groce's prison sentence into execution, this time to be served concurrently for a total of six years.

**{¶8}** In his sole assignment of error, Groce argues the court failed to: (1) conduct the proceedings as a "neutral and detached" hearing body, (2) failed to consider his "overall compliance, adjustment and success with probation," and (3) failed to articulate reasons for revoking his probation.

**{¶9}** A probation revocation raises important constitutional concerns. Although a revocation hearing is not part of a criminal prosecution, the loss of liberty resulting from revocation is a deprivation that warrants due process protection. *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Because the probationer has an obvious interest in maintaining his conditional liberty against an unjustified deprivation, the Supreme Court has imposed certain procedural limits on revocation. *Bearden v. Georgia*, 461 U.S. 660, 666, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), fn.7.

Foremost among these is the right to a hearing at which the court determines two issues: (1) whether the probationer violated a condition of probation as a matter of fact and, if so, (2) whether this fact warrants revocation. *Gagnon* at ¶ 786.

{¶10} To comport with due process in a probation revocation proceeding, the trial court must adhere to the following conditions: (1) written notice to the probationer of the claimed violations, (2) disclosure to the probationer of evidence against him, (3) an opportunity to be heard in person and to present evidence, (4) the right to confront witnesses, (5) a "neutral and detached" hearing body, and (6) an explanation by the hearing body of the evidence relied on and the reasons for revoking the probation. *Groce*, 2012-Ohio-5171, at ¶ 16; *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Although a trial court's decision finding a violation of community control will not be disturbed on appeal absent an abuse of discretion, a trial court abuses its discretion when it violates a probationer's due process rights. *State v. Hayes*, 8th Dist. Cuyahoga No. 87642, 2006-Ohio-5924, ¶ 12-15.

### Neutral and Detached

{¶11} Groce contends the court failed to act as "a neutral and detached" body when it revoked his probation. He argues the court was not "neutral and detached" because it acted according to a blanket policy that required all probation violators be sent to prison.

{¶12} The trial court that placed a defendant on probation is considered a "neutral and detached" hearing body for purposes of probation revocation, "unless there is

evidence to demonstrate that undue bias, hostility, or absence of neutrality existed on the part of the court." *State v. Murr*, 35 Ohio App.3d 159, 520 N.E.2d 264 (6th Dist.1987), at syllabus, applying *Gagnon*, 411 U.S. 778. Groce has not demonstrated, nor do we find, any evidence to indicate that the trial court acted with any bias or hostility.

{¶13} Although the court originally stated that it generally sends all probation violators to prison, the court's first decision to revoke Groce's probation was subsequently reversed on appeal because of this policy. *Groce* at ¶ 18. On remand, the court made no reference to any blanket policy when it decided to revoke Groce's probation the second time. Furthermore, the court considered Groce's rehabilitation efforts when it ran his sentences concurrently instead of consecutively. The decision to reduce Groce's sentence is more indicative of fairness than bias or hostility. The record indicates that the trial court acted as a "neutral and detached" body when it revoked Groce's probation.

### Evidence and Reasons

{¶14} Groce also argues the trial court violated his right to due process because it failed to identify the evidence it relied upon and the reasons for revoking his probation. He also contends the court failed to consider his overall compliance with probation.

{¶15} However, it is evident from the transcript of the probation hearing that the court complied with all the due process protections. At the start of the hearing, the following exchange took place:

> THE COURT: Has the defendant received a written notice of the claimed violations?

MS. LAWSON: Yes, your Honor.

THE COURT: Does he understand he has an opportunity to be heard and to present witnesses and any documentary evidence that he desires?

MS. LAWSON: Yes, your Honor.

THE COURT: He has a right to confront and cross-examine witnesses?

MS. LAWSON: Yes, your Honor.

**{¶16}** As part of his probation, the court ordered Groce to submit to regular drug testing and required him to obtain drug counseling. Groce admitted at the probation hearing that despite being ordered to pursue drug treatment, he did not participate in drug rehabilitation programs until after he was sentenced to prison after the first probation violation hearing. In stating its reasons for revoking Groce's probation, the trial court explained:

> We'll move to the merits which indicate Mr. Groce tested positive for cocaine after he was placed on probation, given the opportunity to participate in drug counseling and testing.

Having found Groce in violation of his probation, the court could have imposed the original consecutive sentence. Indeed, the court initially imposed the same consecutive sentence it imposed after the first probation hearing, but changed the sentence to concurrent service after Groce's trial counsel reminded the court that Groce had been making a genuine effort at rehabilitation in prison. Therefore, the court gave a valid reason for revoking Groce's probation, which was based on evidence including Groce's admission that he used cocaine. The court considered Groce's overall compliance with

probation (drug rehabilitation), albeit in prison, when it reduced his sentence from consecutive to concurrent service.[1]  Groce understood the terms of his probation and knowingly violated those terms.  Under these circumstances, we find no due process violations.

{¶17} The sole assignment of error is overruled.

{¶18} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

---

[1]  At oral argument, Groce's appellate counsel argued that Groce's sentence was not reduced because journal entries in the dockets of Groce's cases indicate that he was originally sentenced to concurrent prison terms.  However, the entries counsel referred to are dated 10/21/11.  The journal entries immediately preceding the 10/21/11 entries are dated 5/24/11 and state that Groce's sentences are "consecutive to any other sentence."  Any ambiguity in these conflicting journal entries was settled in Groce's first appeal, which addressed his consecutive sentences.

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR